UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RAYMONDA SUTTER, *et al.*,  Case No. 1:20-cv-974
    Plaintiffs,  Litkovitz, M.J.

v.

AMERICAN FAMILY
INSURANCE COMPANY,  **ORDER**
    Defendant.

On October 22, 2020, plaintiffs filed their complaint in the Court of Common Pleas, Civil Division, Warren County, Ohio. (Doc. 3). Defendant removed the civil action to this Court under 28 U.S.C. §§ 1332, 1441, and 1446 and filed its answer to plaintiffs' complaint on December 9, 2020. (Docs. 1, 5). This matter is before the Court on plaintiffs' motion to remand (Doc. 8) and defendant's memorandum in opposition (Doc. 10).

**I. Factual Allegations**

Plaintiffs make the following factual allegations in the complaint: On October 26, 2018, plaintiffs, husband and wife, were involved in a car accident in Warren County, Ohio when a vehicle driven by Donald Hicks crossed into plaintiffs' lane of travel causing a head-on collision. (Doc. 3 at PAGEID 18-19). Plaintiff Raymonda Sutter ("Raymonda") suffered temporary and permanent injuries as a result of the accident. (*Id*. at PAGEID 19).

Raymonda was insured by defendant American Family Insurance Company, an insurance company licensed to do business in Ohio. (*Id*.). Plaintiff was up to date on her insurance payments at the time the automobile accident occurred. (*Id*. at PAGEID 19, 22). Defendant's insurance policy included underinsured motorist's coverage with limits of $100,000.00 per person. (*Id*. at PAGEID 19). Hicks' insurance policy included a limit of $25,000.00 for bodily

injury/liability coverage. (*Id*.). Raymonda's injuries, however, exceeded the coverage provided under Hicks' liability insurance policy. (*Id*. at PAGEID 20).

On April 7, 2020, Raymonda demanded $25,000.00 from Hicks' insurance company for bodily injury/liability coverage. (*Id*. at PAGEID 19). Hicks' insurance company agreed to tender the $25,000.00 per person in bodily injury/liability coverage in exchange for a release of all claims against Hicks. (*Id*.). On May 4, 2020, Raymonda informed defendant of Hicks' insurance company's offer and advised defendant in writing that she wished to accept this offer and proceed with an underinsured claim through defendant. (*Id*. at PAGEID 19-20).

The next day, however, defendant advised Raymonda that it would not exercise its option to advance the settlement amount Hicks' insurance company had offered and would take a reduction for medical expenses paid under the medical expense coverage from the underinsured motorist coverage. (*Id*. at PAGEID 20). Defendant told Raymonda that she could accept Hicks' insurance company's settlement offer. (*Id*.). On May 9, 2020, defendant demanded reimbursement from Hick's insurance company for the $5,000.00 in medical expenses it paid on behalf of Raymonda. (*Id*.). Plaintiff alleges that "as a result of [defendant's] contrary positions, [plaintiff] has been delayed in signing a release with [Hicks' insurance company] and receiving the settlement funds." (*Id*.).

Raymonda provided copies of her medical records, bills, photographs of the accident, and other relevant documents to defendant to properly evaluate her demand for an underinsured motorist's claim. (*Id*.). Despite timely confirming receipt of Raymonda's email, defendant subsequently sent an email to Raymonda stating it had not yet received the supporting documents outlined in the policy limits demand claim. (*Id*. at PAGEID 21). Raymonda, through counsel, advised defendant that she had already sent the requested documents. Raymonda again sent all

the supporting documents to defendant. (*Id.*). Defendant acknowledged receipt of this email and the supporting documents. (*Id.*).

Thereafter, on June 11 and July 6, 2020, defendant refused to make a settlement offer, advised Raymonda that it had no underinsured motorist exposure, and closed its underinsured motorist file because Raymonda "was made whole with the $25,000.00 policy limits settlement" by Hicks' insurance company. (*Id.*). Plaintiffs allege that defendant failed to tender the amount requested by Raymonda and failed to offer a fair and reasonable settlement to resolve her underinsured motorist's claim. (*Id.* at PAGEID 21, 22). Plaintiffs additionally allege that defendant failed to "promptly, adequately, and reasonably investigate the facts and circumstances of the subject collision including the severity of Raymonda's damages [and] the necessity of plaintiff['s] medical treatment and the reasonableness of her damages." (*Id.* at PAGEID 22).

On these facts, plaintiff Raymonda Sutter alleges underinsured coverage, breach of contract, and bad faith causes of action. Plaintiff Larry Sutter similarly alleges a loss of consortium claim as a result of the automobile accident that occurred on October 26, 2018. (*Id.* at PAGEID 23). Plaintiffs seek "compensatory damages relating to the breach of contract [cause of action] as well as punitive damages against defendant [] for the bad faith and failure of good faith in the handling of [Raymonda's] claim, including costs, prejudgment interest and attorney fees." (*Id.*).

## II. Motion to Remand (Doc. 8)

### A. The parties' positions

Plaintiffs ask the Court to remand this case back to the Warren County Common Pleas Court. (Doc. 8 at PAGEID 35). Plaintiffs argue that defendant has not satisfied its burden to

3

prove that the amount in controversy exceeds $75,000 as required under 28 U.S.C § 1332(a). (*Id*.). Plaintiffs contend that Raymonda was covered by an underinsured motorist policy issued by defendant with a limit of $100,000.00 per person and settled with Hicks' insurance company for $25,000.00. (*Id*. at PAGEID 36). Plaintiffs further allege that defendant paid $5,000.00 in medical payments through the medical payments coverage terms under the insurance policy. (*Id*.). Plaintiffs therefore assert "the most" they can recover is $70,000, which is $5,000 below the $75,000 threshold amount. (*Id*. at PAGEID 37). Plaintiffs also argue that the bad faith claim, "which will be bifurcated," is "currently moot" because it is dependent on the outcome of the underinsured motorist trial. (*Id*.).

Defendant argues in opposition that a fair reading of the allegations in plaintiffs' complaint clearly establishes that the amount in controversy exceeds $75,000 because claims for bad faith and punitive damages must be considered when calculating the amount in controversy. (Doc. 41). Defendant argues that without consideration of plaintiffs' claim for punitive damages, plaintiffs allege they are entitled to recover up to $70,000.00. (*Id*. at PAGEID 43). Defendant argues that because under Ohio law a court can award punitive damages in an amount up to two times the amount of compensatory damages awarded, "it is more likely than not that plaintiffs' claims, if successful, will exceed the $75,000 jurisdictional limit." (*Id*. at PAGEID 44).

**B. Law governing motions to remand**

"When a defendant removes an action from state court to federal court, the federal court has jurisdiction only if it would have had original jurisdiction over the action." *Total Quality Logistics, LLC v. Summit Logistics Grp., LLC*, No. 1:20-cv-519, 2020 WL 6075712, at *2 (S.D. Ohio Oct. 14, 2020) (citing 28 U.S.C. § 1441(a)). A district court has original jurisdiction over a civil action between citizens of different states when the amount in controversy "exceeds the sum

or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). In order for diversity jurisdiction under § 1332(a) to lie, the citizenship of the plaintiff must be "diverse from the citizenship of each defendant" thereby ensuring "complete diversity." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (citing *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 531 (1967)).

The party opposing the motion to remand "has the burden of showing, by a preponderance of the evidence, that the jurisdictional amount is met." *Total Quality Logistics*, 2020 WL 6075712 at *3 (citing 28 U.S.C. § 1446(c)(2)(B)). *See also Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 470-71 (6th Cir. 2019). The "preponderance of the evidence" standard is well-established:

> Preponderance of the evidence "is not a daunting burden," but it "still requires evidence." *Warren v. Sheba Logistics, LLC*, No. 1:15-cv-148, 2016 WL 1057322, at *2 (W.D. Ky. Mar. 14, 2016). That evidence can come from many sources, including a fair reading of the complaint if it contains "clear allegations . . . that the case involved a sum well in excess of the $75,000 minimum." *Crimaldi v. Pitt Ohio Express, LLC*, 185 F.Supp.3d 1004, 1008 (N.D. Ohio 2016); *see also Total Quality Logistics, LLC v. Franklin*, No. 1:19-cv-266, 2020 WL 5051418, at *5 (S.D. Ohio Aug. 27, 2020) (discussing various procedural tools available to a party seeking discovery about the jurisdictional amount). Whatever evidence a party seeking removal might rely on, however, "[m]ere speculation is insufficient." *Terry v. Phelps KY Opco, LLC*, No. 7:20-cv-23, 2020 WL 2500306, at *2 (E.D. Ky. Apr. 20, 2020) (citations omitted). Rather, the party must adduce "competent proof that shows the amount in controversy requirement is satisfied." *Id*.

*Kiparskis v. Envirotest Sys. Corp.*, No. 1:20-cv-2485, 2021 WL 119259, at *2 (N.D. Ohio Jan. 13, 2021) (quoting *Total Quality Logistics*, 2020 WL 6075712 at *6).

**C. Resolution**

The issue in this case is whether the Court has original jurisdiction over this civil action. It is undisputed that the parties are citizens of different states. Plaintiffs are citizens of Ohio, while defendant is a corporation incorporated under the laws of Wisconsin, with its principal

5

place of business in Wisconsin. (Doc. 1 at PAGEID 1-2; *see* Doc. 10 at PAGEID 40). Thus, the only inquiry is whether the "amount in controversy" prerequisite is met. Plaintiffs argue that the amount in controversy requirement is not met because plaintiffs' recovery is limited to $70,000. (Doc. 8 at PAGEID 37).

However, plaintiffs also seek "punitive damages" against defendant arising from their bad faith cause of action (Doc. 3 at PAGEID 23), and the Sixth Circuit has held, "[w]hen determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (quoting *Holley Equip. Corp. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (citations omitted)). *See also Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir. 1983) (holding that "[a] punitive damage claim must be included [in the amount-in-controversy] unless such damages are barred by the applicable state law."). Moreover, "[w]hether plaintiff will prevail on her claims is irrelevant for the purposes of determining the amount in controversy." *Wyatt v. New England Mut. Life Ins. Co.*, No. 2:17-cv-40, 2017 WL 954794, at *2 (S.D. Ohio Mar. 13, 2017), *report and recommendation adopted*, 2017 WL 1234056 (S.D. Ohio Apr. 3, 2017).

Under Ohio law, "[p]unitive damages are not recoverable for a breach of contract" claim because "the sole purpose of contract damages is to compensate the nonbreaching party for losses suffered as a result of a breach[.]" *DeCastro v. Wellston City Sch. Dist. Bd. of Ed.*, 761 N.E.2d 612, 616-17 (Ohio 2002) (internal citations and quotations omitted). *See also Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 462 (Ohio 2018) ("Ohio common law provides that punitive damages may not be awarded for breach of contract, no matter how willful the breach."). Conversely, "Ohio law permits an award of compensatory and punitive damages

against insurers who act in bad faith." *Pollock v. State Farm Mut. Auto. Ins. Co.*, No. 2:11-cv-581, 2011 WL 5075815, at *2 (S.D. Ohio Oct. 26, 2011) (citing *Dardinger v. Anthem Blue Cross & Blue Shield*, 781 N.E.2d 121, 143 (Ohio 2002)).[1] "If proven, a bad-faith claim justifies recovery of more than contractual damages arising from the insurance policy." *Est. of Millhon*, 2009 WL 2431252 at *3 (citing *Grange Mut. Cas. Co. v. Rosko*, 767 N.E.2d 1225, 1236 (Ohio Ct. App. 2001)). Ohio Rev. Code § 2315.21(D)(2)(a) further permits a court to award punitive damages up to "two times the amount of the compensatory damages awarded to the plaintiff from that defendant." The Sixth Circuit case of *Heyman* is instructive in this regard.

In *Heyman*, the Sixth Circuit found that the defendant proved by a preponderance of the evidence that the amount in controversy exceeded $75,000 even though the plaintiff stated in the complaint that he was not seeking more than $75,000 in damages. *Heyman*, 781 F. App'x at 466. There, the plaintiff brought a lawsuit in state court against the defendant alleging breach of contract and bad faith causes of action. *Id*. at 467. In his prayer for relief, plaintiff sought "all available damages . . . (not to exceed $75,000)[.]" *Id*. The defendant filed a notice of removal to federal district court. *Id*. The plaintiff "submitted to the district court the stipulation that asserted that he will not seek or accept damages in excess of $75,000." *Id*. at 470.

---

[1] In determining the amount in controversy in this matter, the Court will consider compensatory and punitive damages, but exclude attorneys' fees. *See Pollock*, 2011 WL 5075815 at *2 (quoting *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007) (holding that "[a]s a general rule, attorneys' fees are excludable in determining the amount of controversy for purposes of diversity, unless the fees are provided for by contract or where a statute mandates or expressly allows the payment of such fees.")). *See also Turchan v. Equity for Life, LLC*, No. 2:07-cv-435, 2009 WL 4547670, at *3 (S.D. Ohio Dec. 1, 2009) (considering actual and punitive damages in an amount in controversy calculation but excluding attorneys' fees). *But see Est. of Millhon v. UNUM Life Ins. Co. of Am.*, No. 2:08-cv-652, 2009 WL 2431252, at *3 (S.D. Ohio Aug. 5, 2009) (citing *Furr v. State Farm Mut. Auto. Ins. Co.*, 716 N.E.2d 250, 265 (Ohio Ct. App.1998) (holding that "[c]ompensatory damages arising from a bad-faith insurance claim may include attorney's fees.")).

7

In upholding the court's determination that the amount in controversy requirement had been satisfied, the Sixth Circuit held that the defendant proved "by a preponderance of the evidence that [the plaintiff's] lawsuit indeed could result in a recovery exceeding the minimum monetary amount necessary to invoke the diversity jurisdiction of the federal courts." *Id*. at 473. The Court of Appeals reasoned that although the plaintiff's "provable compensatory damages totaled only $31,305.40" which is below the $75,000 threshold, "even a 2:1 ratio of punitive damages to compensatory damages would place the amount in controversy in [the plaintiff's] case well over $90,000." *Id*. at 472-73.

Similarly, in *Pollock*, the court concluded that the amount in controversy requirement was satisfied because the plaintiff sought, among other things, an award of punitive damages. There, the plaintiff brought a bad faith cause of action against the insurance company in state court alleging that the defendant refused to pay the full amount due under the medical payment coverage section of the insurance policy. *Pollock*, 2011 WL 5075815 at * 1. The plaintiff sought "compensatory damages in an amount in excess of $25,000 as well as punitive damages in a sum in excess of $25,000." *Id*. The defendant removed the civil action to federal district court based on diversity jurisdiction. *Id*.

The court held that the amount in controversy requirement was established because in addition to $33,000 in medical payments, the plaintiff was also seeking "compensatory and/or punitive damages in connection with her bad faith claim. And under Ohio law, a court can award punitive damages in an amount up to two times the amount of compensatory damages awarded." *Id*. at *3 (internal citations omitted). The court reasoned that if the plaintiff was "successful, she could receive the full amount she alleges is due to her under the insurance

8

policy, $33,000, plus compensatory and/or punitive damages in connection with her bad faith claim—an amount which could easily exceed this [c]ourt's jurisdictional threshold." *Id*.

Just as the plaintiffs in *Heyman* and *Pollock* were seeking punitive damages, plaintiffs here are also seeking punitive damages in connection with their bad faith cause of action against defendant. Because punitive damages must be considered by the Court when determining the jurisdictional amount, plaintiffs, if successful, *could* receive the full amount they allege under the insurance policy, $70,000, plus up to two times that amount in punitive damages in connection with their bad faith claim, "an amount which could easily exceed this [c]ourt's jurisdictional threshold." *Pollock*, 2011 WL 5075815 at * 3; Ohio Rev. Code § 2315.21(D)(2)(a). *See also Lovelace v. Stonebridge Life Ins. Co.*, No. 1:13-cv-138, 2013 WL 5797860 (W.D. Ky. Oct. 28, 2013) (where the court concluded that the $75,000 amount in controversy requirement had been met because the plaintiff sought an award of punitive damages in addition to compensatory damages in the complaint); *Est. of Millhon*, 2009 WL 2431252 at *3 (where the court denied the plaintiff's motion to remand and determined that the amount in controversy requirement of $75,000 was satisfied because in addition to "the $52,800 principal from the insurance policies, . . . [the plaintiff's] complaint also prayed for punitive damages, attorneys' fees, court costs and other relief as determined by the court[.]").

### III. Conclusion

The Court concludes that it has original jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

**IT IS THEREFORE ORDERED THAT:**

Plaintiffs' Motion to Remand (Doc. 8) is **DENIED**.

Date: 2/18/2021

Karen L. Litkovitz
Chief United States Magistrate Judge